**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

LANE PIVONKA, on behalf of himself
and all others similarly situated,

      **Plaintiff,**

      **v.**                            **Case No.  04-2598-JWL**

BOARD OF COUNTY COMMISSIONERS
OF JOHNSON COUNTY, KANSAS,

      **Defendant.**

_____

**MEMORANDUM AND ORDER**

This putative collective action lawsuit arises from the alleged practice of Johnson County Med-Act (Med-Act), which is one of the departments of the government of Johnson County, Kansas, of not paying required overtime compensation to certain of its emergency medical service personnel.  Plaintiff Lane Pivonka is a Med-Act employee who asserts a claim for unpaid overtime compensation under § 16(b) of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 216(b).  The matter is presently before the court on Plaintiff's 216(b) Motion to Certify Representative Action and to Approve and Send Notice to Class Members (doc. 9).  By way of this motion, plaintiff seeks conditional certification of an FLSA collective action and a court order authorizing notice to be sent to putative class members.  On July 11, 2005, the court heard oral arguments from the parties on this motion.  After considering the parties' written submissions and oral arguments, the court is now prepared to rule.  For the reasons explained below, the court will grant the motion in part and deny it in part.

Specifically, the court will conditionally certify a class including all Med-Act employees who were employed as Paramedics (MICTs), Lieutenants, or Captains and who were not paid time and a half overtime compensation for scheduled hours worked under the Berkley Schedule within the past three years.[1]   Although the court will authorize notice to be sent to the putative class members, the court directs the parties to confer, attempt to agree upon the form of the notice, and resubmit the proposed form notice to the court for approval.

## FACTUAL BACKGROUND

The facts underlying plaintiff's claim in this lawsuit are essentially undisputed. Defendant Board of County Commissioners of Johnson County, Kansas, is a local governmental entity and Med-Act is one of the departments operated under its authority.  Med-Act provides emergency medical and fire protection services to the citizens of Johnson

---

[1] Plaintiff alleges that Johnson County willfully violated the FLSA.  Compl. (Doc. 1), ¶ 13, at 4.  If he can prove that allegation, his claim – and the claims of all similarly situated Med-Act employees – is subject to the three-year statute of limitations under the FLSA. *See* 29 U.S.C. § 255(a) (FLSA claims must be commenced "within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued").  The limitations period is not tolled with respect to other potential plaintiffs unless and until they opt in to the case.  29 U.S.C. § 256(b).  Accordingly, the court will grant the requested relief with respect to all persons so employed within the last three years.  *See, e.g.*, *In re Food Lion, Inc. FLSA "Effective Scheduling" Litig.*, 151 F.3d 1029, 1998 WL 322682, at *12-*13 (4th Cir. June 4, 1998) (unpublished table opinion) (holding the district court did not err by dismissing opt-in plaintiffs' claims which exceeded the limitations period when no consents were filed within the applicable three-year period); *Vaicaitiene v. Partners in Care, Inc.*, Case No. 04 Civ. 9125, 2005 WL 1593053, at *7 (S.D.N.Y. July 6, 2005) (explaining this principle and authorizing notice to those employed up to three years prior to the court's opinion "in the interest of reaching all similarly situated potential plaintiffs").

County.   Med-Act operates on a paramilitary structure with several different positions of varying rank.   At issue in this lawsuit is the work schedule and pay plan that Johnson County utilizes with respect to its Med-Act employees in the positions of Paramedic, Lieutenant, and Captain.

Johnson County has elected to treat Paramedics, Lieutenants, and Captains as non-exempt employees except to the extent that they are subject to the partial exemption for public safety personnel set forth in 29 U.S.C. § 207(k).   The § 207(k) exemption essentially allows public agencies not to pay time and a half overtime compensation for 216 hours worked in a 28-day work period to employees engaged in fire protection or law enforcement activities. In other words, those employees work an average of 56 hours per week without being paid time and a half overtime compensation rather than the generally applicable 40 hours per week. Consistent with this exemption, Med-Act has adopted the so-called Berkley Schedule for its Paramedics, Lieutenants, and Captains whereby those employees are scheduled to work 216 hours (specifically, nine 24-hour shifts) in a 28-day work period.   Those employees do not receive time and a half overtime compensation for scheduled hours worked under the Berkley Schedule.   At oral argument, plaintiff clarified that he seeks certification of the collective action only with respect to Med-Act's policy and procedure of not paying time and a half overtime compensation for scheduled hours worked in excess of 40 hours a week but within the 216-hours/28-day Berkley Schedule.   Thus, the extent to which Med-Act pays overtime compensation for unscheduled hours worked and/or hours worked above and beyond the Berkley Schedule is not at issue here.

**LEGAL STANDARD FOR
FLSA COLLECTIVE ACTION CERTIFICATION**

The FLSA provides for a class action where the complaining employees are "similarly situated." 29 U.S.C. § 216(b). The Tenth Circuit has approved a two-step approach in determining whether plaintiffs are "similarly situated" for purposes of FLSA § 16(b). *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001). Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are similarly situated. *Id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 679 (D. Colo. 1997)). That is, the district court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). For conditional certification at the notice stage, a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (quotation omitted; brackets in original). The standard for certification at this notice stage, then, is a lenient one that typically results in class certification. *See Mooney*, 54 F.3d at 1214; *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995) (certification decision at the notice stage is usually based only on the pleadings and any affidavits which have been filed and, thus, the standard is fairly lenient and typically results in conditional certification of a representative class), *aff'd*, 114 F.3d 1202 (11th Cir. 1997) (unpublished table opinion).

At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are similarly situated using a stricter standard. *Thiessen*, 267 F.3d at 1102-03. During this "second stage" analysis, a court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made any required filings before instituting suit. *Id.* at 1103.

This case is in its early stages. Although the parties have engaged in discovery relating to class certification, the court has not yet entered a scheduling order governing merits-based discovery. The court has not yet imposed a discovery deadline, set a date for the final pretrial conference, or set a trial date because the court contemplated entering an amended scheduling order after the court's ruling on the current motion for class certification. In any event, this case certainly has not progressed to the conclusion of discovery, at which point the court would apply the "second stage" analysis standard. Thus, the court will analyze plaintiff's motion under the lenient "notice stage" standard described above.

## DISCUSSION AND ANALYSIS

For the following reasons, the court readily concludes that conditional certification of this action is appropriate for purposes of sending notice to potential class members. Plaintiff's complaint alleges that he and other similarly situated Med-Act employees are routinely required to work an average of 56 hours per week for a total of 2,912 hours per year

without receiving overtime compensation.   Mr. Pivonka has submitted an affidavit in support

of his motion for class certification which supports this allegation and he has also submitted

a copy of Med-Act's pay table, a portion of which is "Based on 2912 Hours Worked/Year."

Additionally, Johnson County submitted an abundance of evidence from which it is apparent

that Paramedics, Lieutenants, and Captains are not paid overtime compensation under the

Berkley Schedule.   Thus, the record reveals that Paramedics, Lieutenants, and Captains are

"together the victims of a single decision, policy, or plan," *Thiessen*, 267 F.3d at 1102

(quotation omitted), namely Johnson's County alleged failure to pay required overtime

compensation for scheduled hours worked in excess of 40 hours per week under the Berkley

Schedule.   Thus, plaintiff is similarly situated to other members of the putative collective

action, which includes those employees whom Johnson County elected to treat as non-exempt

employees except to the extent that those employees were partially exempt pursuant to the §

207(k) public safety personnel exemption.   *See generally, e.g.*, *Clarke v. Convergys*

*Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601 (S.D. Tex. 2005) (granting conditional class

certification at the notice phase where the plaintiff demonstrated that he was similarly situated

to other employees in the sense that all were victims of the employer's practice of not paying

overtime); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676 (D. Kan. 2004) (same).

Johnson County raises several arguments why the court should deny conditional class

certification, all of which the court finds to be without merit.   First, Johnson County argues

that plaintiff has failed to produce a factual basis to support his motion despite a discovery

period devoted entirely to the issues of whether a class should be certified and the scope of

the collective action.   In support of this argument, Johnson County cites *Davis v. Lenox Hill Hosp.*, Case No. 03 Civ. 3746, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004), for the proposition that there must be a factual nexus between the claims of the named plaintiff and those who have chosen to opt in to the action.   In *Davis*, the court noted that the plaintiff could only present a factual nexus between her claims and those of other "Elite Corps" registered nurses (RNs), not other nurses employed by the defendant, and consequently the court authorized an FLSA collective action only with respect to the Elite Corps RNs.   *Id.*   In that case, however, the Elite Corps RNs were treated differently for compensation purposes from the non-Elite Corps nurses.   *Id.* at *2.   In contrast, here, the record before the court reveals that all Med-Act Paramedics, Lieutenants, and Captains were treated similarly for purposes of scheduling and compensation.   *See also England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 508 (M.D. La. 2005) (collective action is appropriate where some factual nexus binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice).   The issue in this lawsuit is not whether the putative class members were victims of Med-Act's policy and practice of not paying overtime compensation for scheduled hours worked under the Berkley Schedule – it is undisputed that they were – but rather whether that policy and practice was lawful.   Johnson County ultimately will bear the burden of proof on this issue.   *See Spradling v. City of* Tulsa, 95 F.3d 1492, 1504 (10th Cir. 1996) (public sector employer bears the burden of establishing that it qualifies for a § 207(k) exemption).

Johnson County also urges the court to deny conditional certification on the grounds that the Paramedics, Lieutenants, and Captains are not similarly situated with respect to their

7

job duties.    Paramedics are entry-level employees who serve as front-line service providers. Lieutenants and Captains, on the other hand, are more akin to mid-level managers who have had significant emergency service experience as Paramedics and have supervisory, administrative, and managerial responsibilities.    Specifically, Lieutenants supervise and direct the work of Paramedics, evaluate Paramedics' performance and complete their annual performance appraisals, recommend disciplinary action, control emergency response scenes, manage units' supplies, provide crew training, and mentor interns.    Approximately thirty percent of their duties and the time spent on those duties involve supervisory and administrative tasks not performed by Paramedics.    Captains supervise and direct the work of Paramedics and also occasionally Lieutenants, serve as executive officers of their respective Battalions, serve as field training officers responsible for the training and evaluation of new hires, evaluate the performance and complete the annual performance appraisals of Paramedics, provide input to the Battalion Chiefs for the evaluation and performance appraisals of Lieutenants, issue discipline to Paramedics and Lieutenants, control emergency response scenes, manage supplies, and provide training to their crew.    They have significant administrative and managerial responsibilities, including scheduling, training, evaluation of employees, management of inventory, and coordination and integration with municipal fire departments operated in conjunction with Med-Act.    A substantial percentage of Captains' duties are spent on supervisory and administrative tasks not performed by Paramedics or Lieutenants.

In support of this argument, Johnson County relies on *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661 (D. Kan. 2004), in which another judge of this court stated that "before analyzing whether plaintiff and the putative class were 'victims of a single decision, policy, or plan,' the logical preliminary question is whether the putative class shares similar job duties with plaintiff." *Id.* at 665. This statement, however, is directly contrary to the Tenth Circuit's plain statement in *Thiessen* that all that is required for conditional certification at the notice stage is a showing that the putative class members were together the victims of a single policy, decision, or plan. The Tenth Circuit specifically stated that the court reviews the disparate factual and employment settings of the individual plaintiffs and the various defenses available to defendant which appear to be individual to each plaintiff in the court's second-stage analysis on a motion to decertify at the conclusion of discovery. *Thiessen*, 267 F.3d at 1103; *see also Vaszlavik*, 175 F.R.D. at 678-79 (rejecting defendant's argument that plaintiffs were not similarly situated because plaintiffs worked in markedly different circumstances and positions; concluding that despite any differences, plaintiffs were "similarly situated" for notice purposes in light of substantial allegations that they were all victims of a pattern and practice of age discrimination). Thus, the court is not persuaded by this aspect of the district court's reasoning in *Stubbs*. Plaintiff also points out that in *Stubbs* the court stated that "'[a] fundamental requirement of maintaining a class action is that the representatives must be members of the classes or subclasses they seek to represent.'" 227 F.R.D. at 665 (quoting *Clayborne v. Omaha Pub. Power Dist.*, 211 F.R.D. 573, 580 (D. Neb. 2002)). *Stubbs'* reliance on *Clayborne* for this proposition was, however, misplaced because *Clayborne*

involved a motion to certify a class action under Federal Rule of Civil Procedure 23, not a

collective action under FLSA § 16(b).[2]   The Tenth Circuit in *Thiessen* expressly rejected the

notion that Rule 23's standards apply to certification under FLSA § 16(b).   267 F.3d at 1105.

This does not mean that considerations of adequacy of representation are necessarily irrelevant

in a putative FLSA collective action, *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682

(D. Kan. 2004), but here all of the putative class members are similarly situated in the sense

that they all carry out paramedic-type duties, albeit with some variations among their

responsibilities, and Johnson County has elected to treat them all as non-exempt employees

except with respect to Med-Act's pay practices under the Berkley Schedule.

Johnson County also advances the argument, unsupported by any citation to authority,

that it would be unduly prejudiced if Lieutenants and Captains were included in the putative

class.   Johnson County's concerns in this regard are that Johnson County needs to be able to

consult with its Lieutenants and Captains in conjunction with defending this lawsuit and,

additionally, in order to ensure that Med-Act employees respect the rights of plaintiff and

---

[2] Perhaps the court's reasoning in *Stubbs* is attributable to the nature of the defendant's allegedly unlawful pay practice in that case, which was tied to the nature of the putative plaintiffs' job duties.   In *Stubbs*, the plaintiff alleged that the defendant violated the FLSA by classifying plaintiff and the putative class members as exempt and not paying them required compensation for overtime hours worked by purposefully understaffing its McDonald's restaurants and forcing plaintiff and other first and second assistant managers to carry out the duties and responsibilities of the staff, who were compensated on an hourly basis.   Thus, in *Stubbs* the unlawfulness of the defendant's pay practices depended upon the extent to which the plaintiff and putative class members were required to carry out the job duties of their subordinates.   By comparison, this case involves no such allegations.   Here, Johnson County's allegedly unlawful practice categorically pertains to all of the Med-Act employees on the Berkley Schedule and this includes Paramedics (MICTs), Lieutenants, and Captains.

other potential Med-Act employees to pursue their rights under the FLSA in this lawsuit. Johnson County additionally argues that Lieutenants and Captains have shown no interest in joining in this lawsuit as opt-in plaintiffs, although Johnson County has submitted no evidence in support of this broad generalization. Johnson County's theory in this regard, then, is that it will be unduly prejudiced by the difficulties that will arise in communicating with its Lieutenants and Captains whereas any suggestion by plaintiff that Lieutenants and Captains want to join in this lawsuit is purely speculative. At oral argument, counsel for Johnson County suggested that a less prejudicial and more efficient way to handle this dilemma would be to exclude Lieutenants and Captains from the putative class; then, if they want to assert FLSA claims based on the Berkley Schedule at a later date they can do so by way of filing a separate lawsuit. The potential for such duplicative litigation, however, is contrary to the broad remedial purpose of the FLSA and the court's interest in avoiding multiplicity of suits. *See Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting that the benefits of an FLSA § 16(b) collective action – including "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" practice – depend on employees receiving accurate and timely notice concerning the collective action); *see also Braunstein v. Eastern Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) (notification of putative plaintiffs "comports with broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"). The court understands Johnson County's concerns and the court also appreciates the difficulties that a lawsuit such as this can bring to the workplace. But those implications are

11

not at all atypical of many FLSA collective action lawsuits that often involve defendants'
current employees.   Johnson County's concerns in this regard do not defeat conditional
certification.

Lastly, the court notes that the parties each submitted a proposed form of the notice to
be sent to putative class members.  At oral argument, however, counsel agreed that if the court
were to conditionally certify the class it would be most productive for them to meet, confer,
and attempt to agree upon the form of notice to be sent to putative class members.
Accordingly, with respect to the issue of the form of notice to be sent to putative class
members, plaintiff's motion is denied without prejudice to be reasserted after counsel have
consulted with one another and attempted to resolve or at least narrow their disputes on this
issue.


**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's 216(b) Motion to
Certify Representative Action and to Approve and Send Notice to Class Members (Doc. 22)
is granted in part and denied in part as set forth above.


**IT IS SO ORDERED** this 27th day of July, 2005.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

12